FILED

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

# UNITED STATES DISTRICT COURT 2022 SEP 12 PM 3:51

for the

Middle District of Florida

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

_Orlando_ Division

| | | |
|---|---|---|
| | ) | Case No. |
| _Angel E. Gastón_ | ) | _5:22-cv-394-KKM-PRL_ |
| Plaintiff(s) | ) | _(to be filled in by the Clerk's Office)_ |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) | |
| -v- | ) | |
| _Lake County; Sheriff Peyton C. Grinell; (see attached sheet)_ | ) | |
| Defendant(s) | ) | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)* | ) | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Defendants

3.) —Unknown name— Cheif Correction Officer

4.) Wellpath

5.) Correct Care Solutions, LLC

6.) —unknown name— Manufacturer of "The Chair"

7.) The Wrap —manufacturer

8.) Deputy Gilmore

9.) Deputy Welch

10.) Deputy Conger

11.) Deputy Gainey

12.) Deputy Paul

13.) Deputy Jones

14.) Deputy Sharp

15.) Deputy Knight

16.) Deputy Loveless

17.) Deputy Tomson

18.) Deputy Nievez

19.) Deputy Shae

20.) Deputy —unknown name— Caucasion male Mallia

21.) Howard H. Lawrence

22.) Nurse Jacklyn

23.) Nurse Kurt

24.) Nurse Lori

25.) Nurse Glenda

26.) Nurse —unknown name— Caucasion female

27.) Nurse —unknown name— Caucasion female

28.) Deputy Edwards

29.) Chaplain —unknown name—

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Angel Elias Gastón Ortiz |
| All other names by which you have been known: | |
| ID Number | 119151 |
| Current Institution | Lake County Detention Center |
| Address | 551 W. Main St. |
| | Tavares                    FL            32778 |
| | City                          State           Zip Code |

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Lake County |
| Job or Title *(if known)* | Government |
| Shield Number | N/A |
| Employer | |
| Address | 315 W. Main St. |
| | Tavares                    FL            32778 |
| | City                          State           Zip Code |

☐ Individual capacity    ☒ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | Sheriff Peyton C. Grinell |
| Job or Title *(if known)* | Lake County Sheriff |
| Shield Number | — unknown — |
| Employer | Lake County |
| Address | 360 West Ruby St. |
| | Tavares                    FL |
| | City                          State           Zip Code |

☒ Individual capacity    ☒ Official capacity

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

Defendant No. 3

Name — Unknown —

Job or Title *(if known)* Cheif Correction Officer

Shield Number — unknown —

Employer Lake County Sheriff/Lake County Detention Center

Address 551 W. Main St

| Tavares | FL | 32778 |
|---|---|---|
| City | State | Zip Code |

☒ Individual capacity    ☒ Official capacity

Defendant No. 4

Name Wellpath

Job or Title *(if known)* Healthcare provider

Shield Number N/A

Employer Lake County Sheriff

Address 551 W. Main St

| Tavares | FL | 32778 |
|---|---|---|
| City | State | Zip Code |

☒ Individual capacity    ☒ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☒ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

Defendants have an unconstitutional custom and/or policy of deliberate indifference to my safety and health that lead to my torture with excessive force by deputies and nursing staff who missuse their power by intentionaly inflicting cruel and unusual punishment based on impermissible considerations leading to: a violation of my right to equal protection; a violation of the due process clause of the fourteenth amendment; a Monell claim; confinement without due process; denial of access to legal materials; and First Amendment retaliation. Deputies and nursing staff acted with actual malice and intent to cause harm in depriving me of the right to be free of physical and mental torture while in their custody. This amounts to outrage and intentional infliction of emotional distress. I also allege violations of the Religious Freedom Restoration Act and the First Amendment.

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Defendant No. 5
Name: Correct Care Solutions, LLC
Job or Title: Health Care Provider
Shield number: N/A
Employer:
Address: 551 W. Main St.
Tavares FL 32778
[X] individual capacity [X] official capacity

Defendant No. 6
Name: Unknown (also Known as "The Chair")
Job or Title: Manufacturer of restraint device
Shield number: N/A
Employer:
Address: — unknown —
[X] individual capacity [ ] official capacity

Defendant No. 7
Name: The Wrap
Job or Title: Manufacturer of restraint device
Shield number: N/A
Employer:
Address: — unknown —
[X] individual capacity [ ] official capacity

Defendant No. 8
Name: Gilmore
Job or Title: Deputy, Lieutenant
Shield number: — unknown —
Employer: Lake County Sheriff
Address: 551 W. Main St.
Tavares FL 32778
[X] individual capacity [X] official capacity

Defendant No. 9
Name: Welch
Job or Title: Deputy, Sergent
Shield number: — unknown —
Employer: Lake County Sheriff
Address: 551 W. Main St.
Tavares FL 32778
[X] individual capacity [X] official capacity

Defendant No. 10
Name: Conger
Job or Title: Deputy, Corporal
Shield number: — unknown —
Employer: Lake County Sheriff
Address: 551 W. Main St
Tavares FL 32778
[X] individual capacity [X] official capacity

Defendant No. 11
Name: Grainey
Job or Title: Deputy, Corporal
Shield number: — unknown —
Employer: Lake County Sheriff
Address: 551 W. Main St
Tavares FL 32778
[X] individual capacity [X] official capacity

Defendant No. 12
Name: Paul
Job or Title: Deputy, Corporal
Shield number: — unknown —
Employer: Lake County Sheriff
Address: 551 W. Main St.
Tavares FL 32778
[X] individual capacity [X] official capacity

Defendant No. 13
Name: Jones
Job or Title: Deputy
Shield number: — unknown —
Employer: Lake County Sheriff
Address: 551 W. Main St
Tavares FL 32778
[X] individual capacity [X] official capacity

Defendant No. 14
Name: Sharp
Job or Title: Deputy
Shield number: — unknown —
Employer: Lake County Sheriff
Address: 551 W. Main St
Tavares FL 32778
[X] individual capacity [X] official capacity

pg 1 of 3

o Defendant No. 15

Name               Knight (male)
Job or Title       Deputy
Sheild number      -unknown-
Employer           Lake County Sheriff
Address            551 W. Main St.
                   Tavares  FL  32778

☒ individual capacity ☒ official capacity

o Defendant No. 16

Name               Loveless
Job or title       Deputy
Sheild number      -unknown-
Employer           Lake County Sheriff
Address            551 W. Main St.
                   Tavares  FL  32778

☒ individual capacity ☒ official capacity

o Defendant No. 17

Name               Tomson
Job or title       Deputy
Sheild number      -unknown-
Employer           Lake County Sheriff
Address            551 W. Main St.
                   Tavares  FL  32778

☒ individual capacity ☒ official capacity

o Defendant No. 18

Name               Nievez
Job or title       Deputy
Sheild number      -unknown-
Employer           Lake County Sheriff
Address            551 W. Main St.
                   Tavares  FL  32778

☒ individual capacity ☒ official capacity

o Defendant No. 19

Name               Shae
Job or title       Deputy First class
Sheild number      -unknown-
Employer           Lake County Sheriff
Address            551 W. Main St.
                   Tavares  FL  32778

☒ individual capacity ☒ official capacity

o Defendant No. 20          Mallia

Name               unknown caucasian male (age 25-30 yrs)
Job or title       Deputy First Class
Sheild number      -unknown-
Employer           Lake County Sheriff
Address            551 W. Main St.
                   Tavares  FL  32778

☒ individual capacity ☒ official capacity

o Defendant No. 21

Name               Howard H. Lawrence
Job or title       Director of Mental Health
Sheild number      -unknown-
Employer           Lake County Sheriff
Address            551 W. Main St.
                   Tavares  FL  32778

☒ individual capacity ☒ official capacity

o Defendant No. 22          African American

Name               Jacklyn (Female)
Job or title       Nurse
Sheild number      N/A
Employer           Wellpath
Address            551 W. Main St.
                   Tavares  FL  32778

☒ individual capacity ☒ official capacity

P.g 2 of 3

• Defendant No. 23

| | |
|---|---|
| Name | Kurt (Female) African American |
| Job or title | Nurse |
| Sheild number | N/A |
| Employer | wellpath |
| Address | 551 W. Main St |
| | Tavares FL 32778 |

☒ individual capacity ☒ official capacity

• Defendant No. 24

| | |
|---|---|
| Name | Lori (Female) Caucasian |
| Job or title | Nurse |
| Sheild number | N/A |
| Employer | wellpath |
| Address | 551 W. Main St |
| | Tavares FL 32778 |

☒ individual capacity ☒ official capacity

• Defendant No. 25

| | |
|---|---|
| Name | Glenda (Female) Caucasian |
| Job or title | Nurse |
| Sheild number | N/A |
| Employer | wellpath |
| Address | 551 W. Main St |

☒ individual capacity ☒ official capacity    Tavares FL 32778

• Defendant No. 26

| | |
|---|---|
| Name | unknown (Female) Caucasian |
| Job or title | Nurse |
| Sheild number | N/A |
| Employer | wellpath |
| Address | 551 W. Main St |
| | Tavares FL 32778 |

☒ individual capacity ☒ official capacity

• Defendant No. 27

| | |
|---|---|
| Name | unknown (Female) Caucasian |
| Job or title | Nurse |
| Sheild number | N/A |
| Employer | wellpath |
| Address | 551 W. Main St |
| | Tavares FL 32778 |

☒ individual capacity ☒ official capacity.

• Defendant No. 28

| | |
|---|---|
| Name | Edwards |
| Job or title | Deputy, Captain |
| Sheild number | -unknown |
| Employer | Lake County Sheriff |
| Address | 551 W. Main St |
| | Tavares FL 32778 |

☒ individual capacity ☒ official capacity

• Defendant No. 29

| | |
|---|---|
| Name | -unknown- |
| Job or title | Chaplain |
| Sheild number | -unknown- |
| Employer | Lake County Sheriff |
| Address | 551 W. Main St. |
| | Tavares FL 32778 |

☒ individual capacity ☒ official capacity

pg 3 of 3

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

— none —

D.    Section 1983 allows defendants to be found liable only when they have acted "under color of any
      statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia."
      42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color
      of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of
      federal law. Attach additional pages if needed.

All of the defendants acted with knowledge and were performing their duties as Lake County Sheriff deputies or
Wellpath nursing staff when under the color of state law they repeatedly chose to use or medically permit the
use of excessive force and cruel and unusual punishment in their authority to enforce the policies and/or
customs of Lake County Detention Center and Wellpaths' deliberate indiference to my safety and health.

## III.   Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

- [X] Pretrial detainee
- [ ] Civilly committed detainee
- [ ] Immigration detainee
- [ ] Convicted and sentenced state prisoner
- [ ] Convicted and sentenced federal prisoner
- [ ] Other *(explain)*

## IV.   Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the
alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include
further details such as the names of other persons involved in the events giving rise to your claims. Do not cite
any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain
statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    If the events giving rise to your claim arose outside an institution, describe where and when they arose.

N/A

B.    If the events giving rise to your claim arose in an institution, describe where and when they arose.

The events in this claim arose at the Lake County Detention Centers' C building
and during multiple dates.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

C.    What date and approximate time did the events giving rise to your claim(s) occur?

The specific events mentioned in this claim happened in August 2020 and in the months of November 2020 — June 2021. Other events that amount to the same caliber of torture also occured in the months of October — December of 2017.

D.    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

My first experiense of torture in the custody of Lake County and under the supervision of Sheriff Peyton Grinell, the Chief Correctional Officer, Captain Edwards, and Lieutenant Gilmore was in 2017 when I suffered agonizing pain to my shoulders, upper chest, and neck for over 16 hours in a restraint chair. Sargent Welch and other deputies had lifted my shoulders with the straps and essentially crucified me with my arms down. About 8 hours had passed when I could no longer hold my blatter and request for using the restroom were denied, so I urinated myself. About 3 more hours after that, the amonia from my urine began to blind me and by about the 14th hour I could not open my eyes. That year I was peacefully placed in "the chair" more times than I want to remember. Twice for over 16 hours, a few

See attached...

## V.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

I suffered a serious injury to the bottom left side of my stomach; I did not receive treatment; I require further diagnosis to assess the complete damage to my stomach. I suffered a serious injury to my lower back; I did not receive treatment; I require further diagnosis to assess the complete damage to my lower back. I suffered physical punishment and torture with disgrace and injury to my feelings and reputation. I will need therapy and medication for the physical pain, mental anguish, and emotional suffering caused by the embarrasment, humiliation, shame, and fright of the customs and practices of Lake County. I suffered loss of time, loss of enjoyment of life, loss of business and employment, and loss of liberty without due process. I suffered psychological injury due to the fear of harm and the loss of my right to live free from torture while detained by Lake County.

See attached...

## VI.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

I am requesting an award of actual compensatory damages of $15.2 Million jointly and severally for the injuries stated in section IV of this claim and against Lake County (Florida), the Lake County Sheriff, the Chief Correctional Officer of Lake County, the Lake County Sheriff Detention deputies, the jail healthcare provider, the nurses, and the manufacturers of the restraint medical devices for pain and suffering where the defendants declined to provide necessary care which was clearly and urgently needed; where they used the restraint system as punishment with excessive force which served no legitimate purpose and was in fact suffocation and torture; and where treatment was inflicted multiple times and over a prolonged period by several deputies which reflected a regular practice in the jail. I am requesting an award of punitive damages against the individual defendants of $7.36 Million to penalize the wrong doers and thereby deter others from the blame worthy conduct in this claim. I am also requesting the mutually exclusive therapeutic relief stated on the attached page.

IV. Statement of Claim

D.)... more times just shy of 8 hours each, but everytime the same deputies inflicting the unnecessary pain with their malicious and sadistic punishment for my vocal disapproval of their racist treatment. One deputy that stood against their tourture was booking Lieutenant Lujan; whom soon retired after standing up against their abusive actions. At no point during my incarseration have I ever attempted to hurt myself or been suicidal, I have never physically fought with others, I have never had any weapons, and I have never resisted arrest and restraint. The excessive force that they used was not objectively reasonable to keep control of the jail. Evenmore, these deputies and nursing staff violated my federally protected rights by punishing me in the same outrageous inhumane way over and over again. In 2017 I had no access to legal materials, printing, or copying at any time during my incarseration. I did not have the first idea of who to turn to defend my rights, but I knew that what these deputies and nursing staff were doing was illegal and humanly wrong. After my release in 2018 I attempted to look for help and assistance in filing a complaint, but was only met with high priced lawyers that I could not afford. I even looked up the manuals for the restraint chair online and its instructions for how the device should be used and easily noticed that this jail (both the deputies and nursing staff) were not following the instructions for the "medical device." They were blatanly and purposefuly violating the most basic rule of the manufacturer and federal law; that the device is not to be used for punishment. Unfortunately my efforts stalled with my need to work and rebuild every aspect of my life. Then in August of 2020, again I came under the custody of Lake County and again I was tortured in their restraint system. I could not believe this was an open governmental practice and custom in my hometown. I was fed up and frustrated. So, upon my release I began to contact local officials to demand a change in policy and proceedure in our county jail and policing practices. On October 27th, 2020 during one such protest and demonstration, I was falsely arrested. Several days into my incarseration I attempted to exercise in the housing unit, but was told to "stop runing around the tables." So, I preceded to go up and down the stairs. That is when deputy Jones and deputy Knight came out to the housing unit to tell me that they just didn't want me runing at all. I explained to them that I could not just sit iddle everyday and needed to exercise to help with my mental health condition. Evenmore,

Page 1 of 9

IV. Statement of Claim

D.)... I told them that I should have the right to at least some type of exercise while incarcerated. Suddenly, Corporal Conger came into the housing unit with his tazer in hand and activated instructing me to "cuff up," to which I peacefully complied without resistance or objection. Corporal Conger then took me by the right arm and pushed me out of the housing unit with the handcuffs on behind my back. As we left the doors of the unit, Corporal Conger asks me, "do you remember me?" To which I replied, "I'm not afraid of you." Then Corporal Conger immediately took my head from the right side and slamed the left side of my head into a hallway window, then preceded to body slam me on my chest and climb on me while yelling, "This is my house!" All 3 deputies then picked me up by my legs, torso, and shoulders, took me into a side room and recklessly dropped me on the ground from waist level. Corporal Conger and deputy Jones then preceded to strap me into "the wrap" (restraint device) and made the adjustments as painfully tight as they physically could. Deputy Jones even set his boot on my ankles to leverage his body weight to pull back and tighten the strap on my ankles as much as he could. Again, at no point had I hurt myself, attempted suicide, or physically fought with others. I could not believe that I just could not get away from the torture of these deputies. I could not believe that things that are considered human rights violations in other less developed countries were openly happening right here in central Florida as a normal daily routine of punishment to over enforce control, dominance, and fear in the jail. These acts seem to be ok with everyone but me, the one being tortured. Even nurse Jacklyn, whom is one of the nurses who makes sure this "medical restraint device" is not used for punishment and that I, "the patient," do not experience pain while in "the wrap," permitted the deputies to deliberately keep the restraints severely tight and allowed them to inflict serious unnecessary pain by signing off on their actions as "cleared by medical." I even attempted to be nice to her and compliment her hair so that she would listen to my plea for an adjustment of the device, but the only thing that came of my plea and compliments was a disciplinary report and "strip out" status from Corporal Conger accusing me of "making advancements" at the nurse. For that disciplinary report I was given 30 days in solitary confinement without a hearing. This time I was fed up with this use of unnecessary excessive force and torturous treatment. Someone had to listen to me and see that this pattern of abuse was wrong and that this

page 2 of 9

IV. Statement of Claim

D.) . . . jail was out of control for the continuous inhumane actions they are taking against the inmates. Because of my vocal complaints, Corporal Conger again told me to "cuff up" and put his activated tazer on my neck, walked me to the attorney booth and used the tazer on my neck to slam my face against the wall and placed me in the booth. I wrote grievances, I asked for help from my public defender, I told the chaplain, and even requested the help of Howard Lawrence from the mental health department in the jail. But all of my complaints fell on deaf ears and were marked as "invalid." Howard even described me as being delusional, unpredictable, and exhibiting bizarre behavior. They tried to make me feel crazy for thinking that these actions were wrong. But I knew I was not crazy or delusional. So, I resorted to a hunger strike. My demand was to have a change of custody to another county because I was not safe in Lake County and I feared for my life and loss of limbs. One of these times I knew that this jail will take the excesive use of force even further and my dead body would be the only thing left in the restraints or at the very least I would loose a body part or limb. I just didn't know what else to do or who else to turn to. During my hunger strike I let everyone who came to my door know that ① I am in fear for my life and loss of limbs; and ② that I needed a change of custody out of Lake County due to the repetitive excesive use of force being used on a regular basis in this jail. During my hunger strike Howard came to tell me that I would soon be moved to another facility, something I was thankful to hear. What I didn't know at the time was that Howard was conspiring with others to have me found incompetent to stand trial and be comitted to the Department of Children and Families of Florida. This was the jail's attempt to devalue my testimony of the events that have occurred as just an inmate suffering from the delusions of his mental health. I was not and have never been delusional, as they have claimed. On the 10th day of my hunger strike Sargent Irby came to see me and informed me that he respected what I was doing for standing up for the wrongful acts being comitted by his fellow deputies; that he and other deputies have been working to change the practice, but that because of a strict code of silence and the seniority of some of the policymakers, deputies, and staff involved in the practice, "Nothing leaves the jail," and they have found change to be difficult.

Page 3 of 9

<u>IV</u>. Statement of Claim

D.)... Sargent Irby suggested a solution and compromise to my hunger strike; he said that I should contact officer Jones of the Lake County Sheriffs Internal Affairs Department and tell him my story. Sgt. Irby gave me a stamped envelope and a pen to write and send the letter. Because my weight had dropped significantly during my hunger strike, from my usual 185 lbs to 145 lbs, I agreed to Sgt. Irby's terms and ended my hunger strike. I immediately wrote and sent the letter to Sargent Jones at internal affairs (from whom I never received a responce). Upon ending my hunger strike, the jail doctor, an African American male, prescribed me supplemental snacks, drinks, and tumms to help me regain the weight I had lost so drastically and help with the sudden gain of acids in my stomach, especially since I suffer from ulcers. But in just a couple of days nurse Jacklyn and nurse Glenda had began to deny my prescription claiming that they were out of stock on all of my items while nurses on other shifts were able to provide the prescribed items. On or about December 26th, 2020 I had enough. My stomach was burning with acid reflux and nurse Jacklyn had again denied me my prescribed items. So, I again protested and Sargent Welch (under the supervision of Lieutenant Gilmore) and an unknown caucasian deputy first class instructed me to "cuff up" for disturbing the housing unit; I peacefully complied. They then escorted me to the room with the restraint system known as "The Wrap" and instructed me to lay on my belly, to which again I peacefully complied. I have been placed in restraints so many times by this jail that I was aware of the routine for the device. Again I make a note to mention that I was not suicidal, attempting to hurt myself, or attempting to hurt others when I was placed in the restraint system. On this occassion Sgt. Welch personally adjusted all of the straps and at one point instructed the unknown caucasian deputy first class to, "sit on his back," for maximum adjustment of the strap that held the weight of my legs to my chest. This was the most painful strapdown I had yet experienced at this jail. I immediately noticed Sgt. Welch's technique for inflicting pain was more severe than the other deputies. I remember in 2017, Sgt. Welch was also the deputy who caused my shoulder pain during the 16 hours of torture I experienced in Lake County custody. By the time Sgt. Welch stood up and confirmed he was finished with my strap in, I was

Page 4 of 9

IV. Statement of Claim

D.)... having trouble breathing because of the strap around my stomach and the weight of my legs on my shoulders. My feet were screaming from the tingle and pressure around my ankles; and my back was in agonizing pain from holding up the weight of my legs. Two caucasian nurses arrived to check the restraint system and I immediately let them know that the system was adjusted incorrectly and was causing too much pain already. I knew from past experience that I would spend the next 7 to 12 hours or more in this restraint and if the pain was extremely severe only within minutes then I was in real danger of loosing my legs or even my life. I was in serious medical need due to a substantial risk of serious harm if unattended, but again my cries and plea's for help fell on deaf ears and everyone left the room knowing the pain that was being inflicted and completely disregarded the harm of their actions on my life and body. No breaks are ever provided by this jail once you are in the restraint system; so through the next couple of hours I urinated and defecated myself from the pressure on my stomach and I watched as my toes and my feet began to change color. The deputies mocked, laughed, and even videoed on their personal cell phones my torture in order to maximize my humiliation and embarasment. Even with my African American skin color one could see my feet were purple. With the little breath I had, I tried with all of my energy to begg every deputy that walked by to, "Please save my feet!" and "Please don't let them cut my feet off!" But as the moments passed I began to get weaker and watched my feet be slowly cut from my body as my toe nails turned from purple to black. Deputy White was one of the deputies walking by whom I asked for help and ignored my plea with mocking gestures. The only reason I have my feet today is because deputy Chandler entered the room, noticed the color of my feet and released the ankle straps and readjusted them to less pressure. Deputy Chandler saved my feet from the outrageous acts of his fellow deputies and the deliberate indiference of the nursing staff; and for that I will be eternally grateful. Yet, I still struggled to breathe from the strap around my stomach and the weight of my legs on my shoulders pulling on my back. No one believed that I experienced torture at the hands of Sheriff

page 5 of 9

IV. Statement of Claim

D.).... deputies right here in Central Florida, yet this is an established governmental custom and practice that is widely accepted by the policymakers at all levels of the Lake County Judicial system. After deputy Chandler left, hours went by and the deputies shift changed. My feet still remained in a purple tint to the point that when deputy Shae first came into the room he immediately released the strap on my ankles to eliviate the pressure (though the presure was also coming from the strap around my stomach.). Some time in the night deputy Nieves and deputy Shae unstraped me while Corporal Gainey supervised. The deputies tried to first lift me by my shoulders out of the device and I quickly screamed, "NO, NO, NO, stop, stop!)" It felt like they were ripping my body in two with the weight of my legs attached to the strap around my stomach and being supported by my shoulders and back. So, I suggested that they lift me out of the device by grabing the handles on the shap around my legs and simultaneously grabing my shoulders so that the weight would be distributed evenly when they lift me out. This technique worked as I suspected and the deputies were able to lift me out without further injury. Unfortunately deputy Shae could not get the lock that joined all the straps to release and for about 5 minutes he couldn't figure out why. After a few tries I asked deputy Nieves to put his leg behind my back to help support my seated position while deputy Shae figured out the problem. Suddenly the lock gave way and my legs dropped so suddenly that both deputy Nieves and Shae were startled by the release. The problem was that the weight of my body was preventing the lock from releasing. I could finally breathe! It was like coming out of a breath holding competition, my body naturally started gasping as much air as I could yet. As I gasped for air I ripped my jumper open to check my stomach and on my left lower abdomen was an indentation about an inch deep with the outline of the ring that holds the meeting points of the straps. Suddenly my body started to shake uncontrolably, I knew I was in shock and even worse, I couldn't feel my legs. The deputies asked me to stop shaking and I told them I could not. They asked me to get up, but I also could not. Nurse Kurt was the one who on this occassion came to

IV. Statement of Claim

D.)... Check my vitals after getting out of the restraint system. Nurse Kurt had trouble reading my vitals and just sat there with the deputies and watched me shake uncontrolably. Any prudent nurse would have called for assistance to tend to my shock and provide oxygen. But after about 20 minutes the deputies got frustrated with my legs not working and dragged me by the arms across the floor and into the shower stall so that I could rinse the urine and feces. I was still trembling when I was taken into the shower. Antonio Carter was the inmate "houseman" in the CIBI housing unit who witnessed the deputies drag me past him and into the shower stall. Unfortunately my legs still did not work, so the deputies left me on the shower floor. I messaged my legs and managed to get undressed on the floor. By bracing myself between the walls of the shower I managed to hang from the shower door and slowly began to stand, though my walking was slow and wobbly. While in the shower I noticed the indent on the lower left side of my stomach had now turned into a bulge sticking out of my stomach's side. I immediately asked the deputies to take a picture of my injury, while the other deputies denied my request Corporal Gainey complied and took a picture with his personal cell phone. For the next several weeks I had trouble sleeping, walking, and sitting due to the bulge on my stomach and the pain in my back. I lived in constant fear and regularly woke up in heavy sweats from nightmares of the police torturing me with the restraints. Nurse Lori in Medical was only willing to acknowledge the bulge in my stomach's lower left side and called it a "hematoma". I was infuriated, my fear for my life and safety was real. Yet again like all the other times my pleas for justice and accountability for these outrageous acts went ignored. My grievances were found to be "invalid" and even outside mental health doctors called me delusional due to the reports by Howard Lawrence and the Lake County deputies. So, I again went on a hunger strike. This hunger strike was even more difficult than the first since it had only been about 5 days between the stop and re-start of my first hunger strike. Nevertheless, I was determined to make it to safety. I even wrote another letter to Sargent Jones at the internal affairs department of the Lake County Sheriff's (whom I never heard back from). One of the nurses in medical warned me about the effects of being without food for so long, but I told her, "This is the

IV. Statement of Claim

D.) ... only voice I have left, I don't know what else to do, they should not be allowed to do this to me." To my surprise she leaned into my side and wispered, "I agree, and I have made note of it in my medical report." By the 8th day of my second hunger strike the pain became extreme and I asked Carter (the houseman) to sneak food to me so that I could sustain my strike. But, that effort just ended in even more embarrassment and humiliation. I felt like a pig eating scraps of jail food out of used gloves just for the sake of wanting to be in safe custody. So, by day 10 I gave up the hunger strike. For my disturbance in the housing unit I again received a disciplinary report and was given 21 days in solitary confinement. Yet after the 21 days were done I remained in solitary confinement. In all I did 8 months in solitary confinement; 4 of those months I was confined without due process and just as additional punishment without just cause. At no time during the 8 months was I permitted access to legal materials, printing, or copying in order to attempt the complaint seen here; or to defend myself against the criminal accusations by the state prosecutor which resulted in my further loss of freedom and enjoyment of life. After my 2nd hunger strike the deputies and nursing staff stopped their harrasment and I tried to keep all interactions with staff to a minimum. For months I lived (and continue to be) in constant fear that they would return to their torturous acts, but since then I have not been placed in restraint systems. I later read a transfer order where Howard Lawrence lied by stating that I had not suffered any injuries while incarcerated in Lake county, but that I am "prone to hunger strikes when angered." The minimizing of their actions does not reduce the pain and torture that they purposefully inflicted on me, no matter how widely tolerated their actions in the jail have become. These deputies and nursing staff acted with willful malice to inflict pain and punishment on me. Lake County has a policy and custom of deliberate indifference when they know that their deputies and nursing staff are actively violating peoples human rights and they choose to look the other way; even worse they make and enforce policies that permit the degrading acts of abuse under color of state law. Also, in violation of the fourteenth amendment due process clause for excessive force, the manufacturers of "the chair" and "the wrap" have acted with deliberate indifference by being aware of the circumstances

Page 8 of 9

IV. Statement of Claim

D.) ... Where their medical devices are being used under color of state law to inflict unnecessary pain and punishment on patients and inmates. The manufacturers disregard and lack of proper initial and continuous training and oversight over the use of their medical devices under the color of state law puts patients and inmates life and body at high risk of harm and unnecessary infliction of severe pain by creating the conditions of a real threat of injury due to a lack of training and oversight of their devices. Evenmore, the design of "the wrap" knowingly maximizes unnecessary pain of the patient or inmate by the position it places the individual in and provides ample opportunity for increased torture with the device.

## Religious Freedom Restoration Act and First Amendment

During my incarceration at the Lake County Detention Center I have requested religious materials on the eastern religions of Hinduism, shintoism, and Taoism and have been denied. I allege that the decision and principal effect of the Lake County Sheriff's chaplain's custom and/or policy of denying materials on "other religions" disproportunately advances the practice of "Christianity" by having only access to an abundance of Christian materials and only offering "Christian based" services and meetings. This perposeful act of denial burdens my practice of Hinduism, shintoism, Taoism, and "other religions" and my search for God by prohibiting the education and advancement of my faith; essentially preventing the learning of other religious practices within the Lake County Detention Center without justification that is reasonably related to legitamate penological interests and is therefore in violation of the Religious Freedom Restoration Act and First Amendment rights.

Page 9 of 9

## V. Injuries

... I suffered extended incarceration and the inability to file civil complaints due to the deprivation of my constitutional right to access the courts. I suffered the inability to search for God and practice my faith. I suffered intentional infliction of emotional distress from the intentional outrageous acts of excessive use of force with the purpose of inflicting pain and punishment on me. These injuries have left irreparable physical, mental, and emotional damage that has, is, and will continue to be a detriment on my life.

## VI. Relief

### Therapeutic Relief

- Lake County should agree to form policies that will better monitor the actions of the Sheriff and the detention deputies against the community.
- The manufacturers of the restraint systems should agree to establish certified trainings with the facilities who use their devices and require yearly recertification training to those using these medical devices.
- The manufacturers of "The Wrap" should agree to adjust their design to eliminate unnecessary pain on the patient or inmate.
- The sheriff should agree to require all deputies and healthcare providers who use the restraint devices to hold up to date certifications from the manufacturers of the restraint systems.
- The sheriff should agree to require deescalation communication and tactics training for all deputies and recertification of said training every 2 years.
- The sheriff should agree to require sensitivity training on impermissible considerations such as age, sex, race, national origin, creed, religion, and socio-economic status and establish policies to supervise its deputies adhearence to state and federal laws regarding impermissible considerations.
- The sheriff should agree to work with 3rd party civil rights advocates and non-profits in an effort to be transparent on jail grievances by inmates.
- The sheriff should agree to provide to all inmates a variety of religious materials to choose from and not favor one religion over others.
- The sheriff should agree to provide printing and copying services to all inmates for any legal materials in adhearence with federal law.
- The sheriff should agree to provide inmates with the ability to send certified mail with return receipt through the U.S. Postal Service or other carriers.
- The sheriff should agree to record and maintain for a minimum of 1 year all video from security cameras in the jail.
- The sheriff should agree to require all detention deputies to wear body cameras at all times.
- The sheriff should agree to have grievance proceedures and grievance appeals process, current contact information to 3rd party civil rights advocates, and contact information for County, circuit, and federal district courts posted in every housing unit, along with a list of inmates rights.
- The sheriff should agree to work with 3rd party advocates to improve education, rehabilitation, mental health and therapy within the jail.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## VII.    Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☒ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

Lake County Detention Center

B.    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☒ Yes

☐ No

☐ Do not know

C.    Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☒ Yes

☐ No

☐ Do not know

If yes, which claim(s)?

They covered all of my claims and declared them "invalid."

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.      Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☒ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☒ No

E.      If you did file a grievance:

1.      Where did you file the grievance?

At the Lake County Detention Center

2.      What did you claim in your grievance?

I submitted multiple grievances claiming deputies use of excessive force, torture, and fear for my life and loss of limbs; I submitted grievances to the medical department for denial of medical care; I submitted grievances for lack of access to the courts; and I submitted grievances for the inability to search for God and practice my faith due to the denial of religious materials.

3.      What was the result, if any?

My grievances were declared "invalid."

4.      What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

I appealed all grievances. After my grievances were declared "invalid" I went on hunger strikes to draw attention to the severity of my situation. I attempted to contact the Lake County Sheriff's Internal Affairs department. I attempted to get assistance from my public defender. I attempted to get assistance from the mental health department at the jail. I attempted to contact several outside organisations for assistance. I received no responce from any of these attempts. (see attached copies of letters here known as Exhibit "A.")

F.    If you did not file a grievance:

    1.    If there are any reasons why you did not file a grievance, state them here:

    N/A

    2.    If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

    N/A

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

I discussed the situations in this claim with everyone on the evaluation team at the North Florida Evaluation and Treatment Center and they suggested I stop all reference to my experienced abuse with everyone. Yet, some of the staff members at their facility assisted in putting me on the path to submit this claim for the violation of my Constitutional rights.

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)* (See attached copies of letters here known as Exhibit "A")

## VIII.  Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☒ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

N/A

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this
       action?

       ☐ Yes

       ☒ No

B.    If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is
       more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

       1.    Parties to the previous lawsuit
              Plaintiff(s)      N/A
              Defendant(s)     N/A

       2.    Court *(if federal court, name the district; if state court, name the county and State)*
              N/A

       3.    Docket or index number
              N/A

       4.    Name of Judge assigned to your case
              N/A

       5.    Approximate date of filing lawsuit
              N/A

       6.    Is the case still pending?

              ☐ Yes

              ☐ No

              If no, give the approximate date of disposition.      N/A

       7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered
              in your favor? Was the case appealed?)*

              N/A

C.    Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your
       imprisonment?

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

    ☐ Yes

    ☒ No

D.    If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

    1.    Parties to the previous lawsuit

        Plaintiff(s)   N/A

        Defendant(s)   N/A

    2.    Court *(if federal court, name the district; if state court, name the county and State)*

        N/A

    3.    Docket or index number

        N/A

    4.    Name of Judge assigned to your case

        N/A

    5.    Approximate date of filing lawsuit

        N/A

    6.    Is the case still pending?

        ☐ Yes

        ☐ No

        If no, give the approximate date of disposition   N/A

    7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

        N/A

## IX.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    9/9/2022

Signature of Plaintiff

Printed Name of Plaintiff    Angel E. Gaston

Prison Identification #    119151

Prison Address    551 W. Main St.

Tavares    FL    32778
City    State    Zip Code

### B.    For Attorneys

Date of signing:    N/A

Signature of Attorney    N/A

Printed Name of Attorney    N/A

Bar Number    N/A

Name of Law Firm    N/A

Address    N/A

N/A
City    State    Zip Code

Telephone Number    N/A

E-mail Address    N/A